THE STATE OF KANSAS V. P. S. BRADEN.

No. 15,746.    (96 Pac. 840.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Failure to Bring to Trial—Discharge of Defendant.* Under section 221 of the criminal code a defendant is not entitled to be discharged until after the end of three terms from the time when the information is filed. Time which passes prior to the filing of an information can not be considered.

2. ———— *Verdict Void for Indefiniteness.* In a prosecution under section 1 of chapter 105 of the Laws of 1901 (Gen. Stat. 1901, § 4259), a verdict which finds the defendant "guilty of the crime of grand larceny, all as in manner and form charged in the information," when the information does not charge grand larceny, contains no language intended to describe that offense, does not state any act committed by the defendant nor the value of the property disposed of, is void for uncertainty.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed July 3, 1908. Reversed.

### STATEMENT.

ON November 9, 1906, an information was filed in the district court of Montgomery county against appellant which reads:

"In the name, and by the authority, of the state of Kansas, I, Thomas E. Wagstaff, county attorney, of Montgomery county, in the state of Kansas, who prosecutes for and on behalf of said state in all courts holden in said county, and duly authorized and empowered to inform of all offenses committed therein, come now here and give the above-entitled court to understand and be informed that heretofore, to wit, and on or about the 21st day of February, A. D. 1906, one P. S. Braden, then and there being at and within the county of Montgomery and state of Kansas, did then and there wilfully, unlawfully, feloniously, and with the intent to cheat, wrong and defraud the mortgagee, the First National Bank of Independence, Kansas, a corporation duly organized and existing under and by virtue of the laws of the United States of America, its personal

representatives, administrators and assigns, sell and dispose of the following personal property, upon which the said The First National Bank of Independence, Kansas, then and there had and held a lien, to wit, a chattel mortgage for sixteen hundred and fifty dollars, which personal property is described as follows, to wit:

"Four head of three-year old steers, three of said steers being red face and one white face, formerly owned by O. F. Allen; five head of two-year-old steers, formerly owned by C. Lett; seven head of two-year-old steers, formerly owned by J. S. Coleman; one red two-year-old steer, formerly owned by John H. Cole; one two-year-old red steer, formerly owned by J. H. Merritt; one two-year-old red steer, formerly owned by the Liberty Hardware Company; a better description of said steers and live stock at this time is unable to be given; and all of said live stock being over the value of $20; and at the time said property was sold and disposed of by the said P. S. Braden, as aforesaid, The First National Bank of Independence, Kansas, had a chattel mortgage thereon, executed by the said P. S. Braden to secure an indebtedness of $1650, and the said P. S. Braden did then and there wilfully, wrongfully, feloniously, with the intent to wrong, cheat and defraud the said mortgagee, so sold and disposed of the said personal property hereinbefore mentioned without the written consent of the said mortgagee or its legal representatives, the said mortgagee, the said The First National Bank of Independence, Kansas, then and there having a chattel mortgage on all the above-described personal property, hereinbefore mentioned, belonging to the said P. S. Braden, which chattel mortgage had theretofore been executed by the said defendant to the said mortgagee, The First National Bank of Independence, Kansas, and which said chattel mortgage was then and there in full force and effect, binding, given by the said defendant as security on the personal property hereinbefore mentioned and described, and had theretofore been executed by the said defendant, P. S. Braden, to the said mortgagee, The First National Bank of Independence, Kansas, contrary to, and in violation of, the statutes in such cases made and provided, and against the peace and dignity of the state of Kansas."

The statute under which the information was drawn

37—78 KAN.

is section 1 of chapter 105 of the Laws of 1901, which reads:

"That any mortgagor of personal property or any other person who shall injure, destroy or conceal any mortgaged property, or any part thereof, with intent to defraud the mortgagee, his executors, administrators, personal representatives, or assigns, or shall sell or dispose of the same without the written consent of the mortgagee, or his executors, administrators, personal representatives, or assigns, shall be deemed guilty of larceny, and on conviction thereof shall be punished as follows: For selling, injuring, destroying, concealing or disposing of such property of the value of twenty dollars and under, on which the mortgagee has a lien, or of the value of over twenty dollars, on which the mortgagee has a loan of not more than twenty dollars, as is now provided in the cases of petit larceny; for selling, injuring, destroying, concealing or disposing of such property of the value of twenty dollars and over, on which the mortgagee has a lien to the amount of over twenty dollars, as is now provided in cases of grand larceny."

On May 23, 1907, the appellant moved to be discharged from custody for the reason that he had been in attendance upon the court for three successive terms, and had not been given a trial. The statute under which the motion was filed reads:

"If any person under indictment or information for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found or information filed, he shall be entitled to be discharged so far as relates to such offense, unless the delay happen on his application or be occasioned by the want of time to try such cause at such third term." (Crim. Code, § 221.)

Upon this motion it was shown that the transcript from the justice of the peace before whom the defendant had a preliminary examination was filed in the district court on September 18, 1906. The first term of the district court thereafter, under the law then in force, commenced on the first Monday of October, 1906;.

the second term, on the first Monday of February, 1907. On the 21st day of February, 1907, by an act of the legislature then in session, the terms of court in that county were changed to the first Monday in January, March, May and October of each year. For the want of sufficient time no jury was provided for the March term, and no trial was had. During the May term-following this motion was filed and denied.

On the trial, which occurred May 23, 1907, the jury returned a verdict which reads: "We, the jury, find the defendant, .P. S. Braden, guilty of the crime of grand larceny, all as in manner and form charged in the information."

Among the instructions given by the court to the jury was one which reads:

"(6) As you will observe, the statute provides that if the property sold on which the mortgagee has a lien is of the value of twenty dollars or less the offense is petit larceny; or if the value of the mortgaged property sold is over twenty dollars and the mortgage lien is not more than twenty dollars the offense is petit larceny; but if the mortgaged property sold is of the value of over twenty dollars and the mortgage lien is over twenty dollars, then the offense is grand larceny."

The statute defining grand larceny reads:

"Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, rights in action or other personal property or valuable thing whatsoever of the value of twenty dollars or more, or any horse, mare, gelding, colt, filly, ass, mule, neat cattle, sheep, goat, hog, or in the night-time any domestic fowls, harness, or saddles, belonging to another, shall be deemed guilty of grand larceny." (Laws 1903, ch. 218, § 1.)

The statute fixing the punishment therefor reads:

"Persons convicted of grand larceny shall be punished in the following cases as follows: First, for stealing a horse, mare, gelding, colt, filly, neat cattle, mule or ass, by confinement and hard labor not exceeding seven years; second, in all cases of grand larceny, except as provided in the two succeeding sections, by

confinement and hard labor not exceeding five years."
(Gen. Stat. 1901, § 2070.)

Motions in arrest of judgment and for a new trial
were duly filed and denied. The defendant appeals to
this court.

*Fred S. Jackson,* attorney-general, and *John S. Daw-
son,* assistant attorney-general, for The State.
*Howard A. Scott,* for appellant.

The opinion of the court was delivered by

GRAVES, J.: The motion to dismiss was properly
denied. The state is allowed three terms after the in-
formation is filed in which to bring a defendant to trial.
In this case the information was not filed until No-
vember 9, 1906. The trial was had at the May term
following. The information could have been filed at
the October term, 1906, as the transcript from the
justice of the peace who held the preliminary examina-
tion was filed September 18, 1906. If the defendant
desired to hasten the trial he should have made appli-
cation to the court to require the information to be
filed at the beginning of the October term.

The verdict in this case is too indefinite to indicate
the offense of which the defendant was found guilty.
It states that he is guilty of the crime of grand larceny
as charged in the information. The information con-
tains no charge of that offense. No facts are there
stated which constitute such a crime, and no language
therein indicates that the pleader had grand larceny
in mind when the information was drawn. The facts
which constitute the offense defined in the statute under
which the information was drawn do not constitute
larceny in any legal sense, but the newly created crime
had to have a name, and larceny was selected. The
word "robbery" would have served the same purpose.
The only reference in this statute to grand or petit
larceny is made for the purpose of fixing the punish-

ment for the crime, by reference to another statute, and was not intended to define or describe the offense there created. This sufficiently shows how disconnected and remote the words "grand larceny," as used by the jury in the verdict, are from the offense charged in the information or as it is defined in the statute.

Again, the verdict furnishes no facts which would enable the court intelligently to pronounce sentence. The value of the property disposed of is not given. Unlike the offense of grand larceny, where the value of the property taken, if cattle, is immaterial, in this offense it is important. The extent of punishment depends entirely upon the value of the property disposed of, and may be either five or seven years. In the absence of a finding as to the acts committed by the defendant or the value of the property disposed of the court can not know with certainty what sentence to pronounce.

It has been said that by considering the verdict, information and the statutes which define the offense charged and fix the punishment for grand and petit larceny together it is possible by inference, construction and conjecture to ascertain what the jury intended by the verdict, and that the verdict, so interpreted, should be regarded the same as if it read: "We, the jury, find that the defendant, at the time and place named in the information, did wilfully, unlawfully, and feloniously, and with intent to cheat, wrong and defraud the First National Bank of Independence, Kansas, sell and dispose of the property described in the information, which was then and there of the value of more than twenty dollars, and upon which the said First National Bank then held a mortgage lien of more than twenty dollars, all of which was done in manner and form as charged in the information." We can not concur in such a view. If verdicts may be supplied with material and important findings omitted by the jury by this kind of conjecture and guesswork, then

the security of trial by jury, which we have long supposed to be a shield and protection to persons charged with crime, will have received a serious blow. A person charged with a crime is supposed to be innocent until a verdict which is the result of a lawfully conducted jury trial has been found, and which states in language so definite and certain that different minds can not fairly disagree as to its meaning that he is guilty of such offense. There may be cases where, by a reasonable degree of inference and interpretation, a verdict which is in some degree indefinite and uncertain may be rendered clear and certain beyond a reasonable doubt. In such cases it may be proper by construction to sustain the verdict. All that we decide here is that in this case, as presented, the construction and inferences which the district court must of necessity have resorted to in order to sustain the conviction of this defendant are too robust and far-fetched to be upheld. (*The State v. Reddick,* 7 Kan. 143; *In re Howard,* 72 Kan. 273, 83 Pac. 1032.) The defendant should have been given a new trial.

The judgment of the district court is reversed, with directions to grant a new trial and proceed in accordance with the views herein expressed.

JOHNSTON, C. J., BURCH, SMITH, PORTER, BENSON, JJ., concurring.

MASON, J. (dissenting) : Under the evidence there is room for serious doubt whether the defendant was guilty of an intentional wrong. Therefore in this particular case substantial justice may finally result from holding the verdict insufficient. But the grounds for the ruling are so technical as to be out of harmony with present tendencies in the administration of the criminal law. There is no real difficulty in ascertaining what was meant by the verdict. The statute does not in set terms describe the offense for which the defendant was prosecuted as "grand larceny." But it creates a

new crime, which it calls "larceny," and which it divides into two degrees, or grades, one of which is punished the same as petit larceny and the other the same as grand larceny.  When the jury, in finding that the defendant was guilty of the larceny charged in the information, added the word "grand" they plainly meant thereby to indicate that the property misappropriated was worth more than twenty dollars.  There can be no reasonable doubt of this.  To have been technically accurate the words "grand larceny" in the verdict should have been expanded into "larceny of the degree that is punishable the same as grand larceny."  But the expression employed by the jury, although open to verbal criticism, was apt and intelligible.

Even in criminal cases the ordinary rules of interpretation may be resorted to in aid of a verdict defective in form.  This was decided in *The State v. Wade*, 56 Kan. 75, 42 Pac. 353, where it was held, contrary to the personal view of Mr. Chief Justice Martin, who wrote the opinion, and to a Texas decision there cited, that the omission of the word "find" did not make a verdict void, because the intention of the jury was evident, and the court could in effect supply what was lacking in its expression.